BARNETTE et al. v. FREEMAN et al.

(Third Division. Fairbanks. August 25, 1904.)

No. 152.

1. NEW TRIAL—MOTION—STATEMENT OF GROUNDS.

A motion for a new trial which does not specify the grounds therefor, in compliance with section 229 of the Code of Civil Procedure, will not be regarded by the court. The fifth ground provided in that section—that the evidence is insufficient to justify the verdict—may be stated in the language of the statute.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. New Trial, §§ 256, 261.]

2. SAME—VERDICT CONTRARY TO EVIDENCE.

Where there is a conflict of testimony, the court will not grant a new trial. When, however, the jury renders a verdict upon

insufficient evidence, or in palpable violation of the evidence or the law, a new trial will be granted.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. New Trial, §§ 142-145.]

3. MINES AND MINERALS—LOCATION—RELOCATION BY AGENT—EFFECT.

Plaintiff Barnette located a placer mining claim by staking, but did not make discovery or record. Defendants staked and recorded, but made no discovery. Thereafter Barnette employed Sigler to sink a discovery shaft, in which discovery of gold in paying quantities was made, whereupon Sigler completed marking the boundaries, and filed a location notice in his own name, for himself and Barnette. *Held*, that defendants had acquired no title by their staking and recording, and that plaintiffs acquired a valid title by their staking, recording, and discovery.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Mines and Minerals, § 62.]

4. SAME.

A placer mining claim is not perfected until mineral is discovered within the boundaries.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Mines and Minerals, § 27.]

Suit in ejectment to recover possession of a placer mining claim, known as a side claim, on the right limit to No. 1 creek claim on Cleary creek, in the Fairbanks mining district, Alaska. The claim was first located by plaintiff E. T. Barnette as the attorney in fact for E. R. Barnette on October 2, 1902. Thereafter, and on July 2, 1903, the defendant Al Hilty, concluding that the claim was wider than 660 feet, located a fraction within its limits on the side adjoining No. 1 creek claim, which he owned, 250 feet wide by the length of the claim. On August 10, 1903, defendant Freeman located a claim, which embraced all the remaining portion of Barnette's claim, and possibly the greater portion of Hilty's, and on January 4, 1904, plaintiff Sigler relocated the Barnette claim, departing from the original description but slightly. The case was tried before a jury, which returned a verdict in favor of the defendants. The matter now comes before the court upon a motion for a new trial.

E. B. Condon, L. C. Hess, and N. V. Harlan, for plaintiffs. Claypool, Stevens & Cowles and John F. Dillon, for defendants.

WICKERSHAM, District Judge. The motion for a new trial, omitting the formal parts, is as follows:

"First. The plaintiffs complain and allege that the court erred in holding that the said cause was an action in law and not in equity, and in ordering that the case be submitted to a jury.

"Second. For misconduct of the jury and of the prevailing parties or the defendants in this action.

"Third. For the reason that the plaintiffs have discovered new evidence since the trial, material for the plaintiffs, which they could not with reasonable diligence have discovered and produced at the trial.

"Fourth. For the reason that the verdict appears to have been given and brought about under the influence of prejudice.

"Fifth. For the insufficiency of the evidence to justify the verdict found by the jury.

"Sixth. For the reason that the verdict is contrary to and against the law.

"Seventh. For errors in law occurring at the trial, and duly excepted to by the plaintiffs."

Section 226 of the Code of Civil Procedure (page 189, Carter's Ann. Alaska Codes) states the grounds for which a new trial may be granted by the court. Section 229 also provides that:

"In all cases of motion for a new trial the grounds thereof shall be plainly specified, and no cause of new trial not so stated shall be considered or regarded by the court. When the motion is made for a cause mentioned in subdivisions one, two, three, or four of section two hundred and twenty-six, it shall be upon affidavits setting forth the facts upon which such motion is based, unless they appear of record in the cause."

The second and third grounds mentioned in the motion are, respectively, the second and fourth in section 226, and, not being supported by affidavits, will not be considered by the court. The first ground again presents to the court the alleged error in regard to the character of the case—whether or not

it is an action in ejectment. No argument is presented which convinces the court that its former ruling in this respect was error, but the unfolding of the cause only confirms the former opinion, and this ground is overruled. The fourth ground stated in the motion is also overruled. No affidavit or other showing is made in support of this ground, and the record does not contain any basis for the charge that is not equally available under the fifth ground, relating to the insufficiency of the evidence to justify the verdict. The sixth and seventh grounds in the motion fall under the criticism contained in the case of Moore v. Steelsmith, 1 Alaska, 121, 139, and Williams v. Alaska Com. Co., by the same judge (p. 43, supra), and for the reasons there stated cannot be noticed by the court.

This elimination leaves but the fifth ground of the motion for the consideration of the court, viz.: "For the insufficiency of the evidence to justify the verdict found by the jury."

Whether or not this ground is sufficient to enable the court to test the verdict by the evidence was fully discussed by the venerable and learned judge who now presides in the First Division in the case of Williams v. Alaska Com. Co., supra. His action in that cause was affirmed on appeal to the Circuit Court of Appeals, Ninth Circuit (Alaska Commercial Co. v. Williams, 128 Fed. 362, 63 C. C. A. 92), though the point in question does not seem to have been decided there. In the opinion he says of this particular ground for new trial:

"Evidently, it is a demurrer to the evidence. A general demurrer to a complaint on the ground that the facts pleaded do not constitute a cause of action requires an inspection of the entire record before the court can, without other specification, pass upon the demurrer. The entire evidence in this case is before the court, and the verdict is challenged on the general ground of insufficiency of the evidence to sustain the same: so it seems to follow that the court is required, without other specification, to consider all the evidence before it, as it would consider all the facts stated in a complaint on general demurrer. Considering the evidence, then, as a whole, on the motion as presented, what do we find?"

2 A.R.—19

And in this case, under this authority, ought the motion for a new trial to be granted "for the insufficiency of the evidence to justify the verdict"? In the case of McMorry v. Ryan, 1 Alaska, 516, I had occasion to consider the duty of the court in such a case, and laid down the rule there:

"Where there is a conflict of testimony, the court ought not to set the verdict of a jury aside and grant a new trial, even though the judge would have reached a different verdict upon the same evidence. Where, however, the jury render a verdict upon evidence insufficient to justify it, or in violation of the law, it is the duty of the judge to set it aside and grant a new trial."

Of the action of the jury in that case the court said:

"The jury in this case clearly disregarded both the law and the evidence in rendering its verdict, not in immaterial or disputed matters of evidence only, but in respect to those which were admitted and most material to the issue."

In such cases the duty of the court is clear, and is made imperative by statute.

It is conceded that Barnette located the claim in controversy on October 2, 1902, by setting or marking stakes to mark its boundaries. His three upper stakes yet remain. There was not sufficient or any evidence to justify the jury to find that McCarty was right and Barnette and Eagle wrong about the three upper stakes. Barnette and Eagle testified that the lower stakes were set. McCarty's testimony was that he did not see them set; but there was no denial of Barnette's and Eagle's testimony that they were set, and no testimony offered to impeach their testimony on that point. There was not sufficient or any testimony to justify the jury in finding that the Barnette claim was not so carefully marked that its boundaries could be readily traced on October 2, 1902. There was a divergence in the testimony about the recording, and the conflict on that question was such as to justify the jury in finding that Barnette did not record within the time limited by law.

With full knowledge of Barnette's staking, Hilty located a fraction on July 2, 1903. Hilty acknowledged the existence of the Barnette location when he located a fraction within its boundaries, because, as he argued, it was more than 330 feet from his center stake to creek claim No. 1. Hilty located by attaching his notices to the corner stakes, and neither staked his east line nor made any discovery. Freeman knew of Barnette's location when he staked, and he made no discovery.

The case stood, when Sigler went on the ground, thus: Barnette had staked and marked the ground, but had neither recorded his notice nor made a discovery; Hilty had marked two corners and recorded, but had made no discovery; Freeman had marked one or two upper stakes and recorded, but made no discovery. Sigler, as Barnette's agent, went on the claim for him in October or November, and began the first work of sinking through the deep layer of nongold-bearing muck to seek the mineral which lay at the bottom. A placer mining claim is not perfected until mineral is discovered, and at the time Sigler sunk his holes to bed rock to discover mineral, neither Hilty nor Freeman had any claim to the ground as discoverers. When on December 15, 1903, Sigler, as the agent of Barnette, made a discovery of gold, that discovery inured to the benefit of Barnette's claim, and not to that of either Hilty or Freeman, and when on January 4, 1904, Sigler located the claim by marking its boundaries, he had completely segregated the ground from the public domain, and secured such permanent and vested rights therein for his principal that nothing which any other person could thereafter do could change, modify, or lessen them. The former inchoate claim was then a complete and fixed mining location, subject only to forfeiture by his failure to record within 90 days. He did record on March 7, 1904, within the time limited by law, and the location was then beyond the claims of either Hilty or Freeman, who had not even then made a dis-

covery. It is true that on January 11, 1904, Berks and Sigler signed a contract or lay lease with Hilty, but that was without the consent or knowledge of Barnette, and, whatever effect it may hereafter be held to have on Sigler's rights as they conflict with Hilty's, it did not affect the Freeman part, which was irrevocably fixed by Sigler's discovery and recording in his own name for Barnette.

In so far as the Freeman claim is concerned, the Barnette-Sigler claim was located, marked, recorded, and a discovery made thereon before the same acts were performed for Freeman, and to that extent there was not sufficient or any evidence to justify the jury in finding the verdict which they did. In instructing the jury, the court clearly, positively, and fully laid down the rules which, if followed, would have resulted in a verdict for the plaintiffs, at least so far as the Freeman tract was concerned. For the reason, then, that the evidence did not justify the verdict, the same is set aside, and a new trial granted.